Day, J.
 

 This is an action in mandamus brought by G-race M. Lamb against Bollin Swisher and William S. Bundy, as the state civil service commission of Ohio.
 

 The facts in the case briefly are that said Grace M. Lamb was appointed on June 13, 1922, to a position as stenographer in the classified service
 
 *708
 
 of the state, and was promoted on January 3, 1923, to the position of stenographer, grade II-B; the same being in the classified service of the state. She continued in said position until on or about the l'6th day of June, 1924, when, because of ill health, she was compelled to be absent from her position. ¡She continued upon the pay roll at £90 per month from said June 16, 1924, to January 31, 1925, and received her salary down to the latter date.
 

 On January 31, 1925, the civil service commission granted a formal leave of absence to the relator for one year, but, upon February 28, 1925, said civil service commission canceled and revoked the relator’s leave of absence and so notified her. Said notification was in words as follows:
 

 “We regret to notify you that the condition of the work of the position of stenographer, grade II, in the examination division, has reached the point requiring the permanent assignment of the incumbent, and it has therefore become necessary that your sick leave be terminated by this commission as of February 28, 1925.
 

 “We regret extremely the necessity of this action, but feel that you will readily understand the difficult position of this commission in adjusting the work of this office over so long a period as has been necessary on account of your sickness. Miss Foster has been satisfactorily filling your position, and, inasmuch as we did not wish to lose her services since becoming so familiar with the duties of this position, it became necessary, in order to retain her in this office, to grant her this
 
 permanent promotion.
 

 
 *709
 
 “However, we will only be too glad, of course, at such time as you desire to return to work, to effect your reinstatement and subsequent transfer to the same or similar position in another department of the state service, in case there is no vacancy in this office at that time. ’ ’
 

 On March 6 following’, the relator, through her attorney, wrote the civil service commission as follows:
 

 “Miss Grace Lamb of Middleport, Ohio, has forwarded me letter signed by Mr, Forsythe, secretary of your commission, under date of February 28, 1925, notifying her that her sick leave was terminated by the commission of that date. Miss Lamb, as you know, has been ill, and will soon be able to go back to work. Will she be restored to her former position, or shall she consider your letter of February 28th, as a notice of .discharge from which she must appeal? I trust you can arrange to restore Miss Lamb to her position. Awaiting your reply, etc.”
 

 Under date of March 10, the commission sent the following letter in reply to the letter written by the attorney for the relator:
 

 “The condition of the duties of the position of stenographer, grade II, in this office, occupied by Miss Grace Lamb prior to her illness, compelled this commission to revoke and cancel her sick leave, which had extended over a long period of time, effective as of February 28, 1925.
 

 “This commission feels that we have been unusually fair with Miss Lamb, and have given due consideration to her unfortunate illness. However, the conditions of the work in this office will
 
 *710
 
 not permit this situation to extend indefinitely, and while we appreciate that her illness is unavoidable, it was our opinion, in the best interests of all concerned, that her leave be terminated, and she was so notified.
 

 “On frequent occasions in the past Miss Lamb has sent word to us that she will soon be able to return to her work, leaving the impression with us each time that she was well on the road to recovery, but as yet it has not been possible for her to return to duty.
 

 “Miss Lamb has not been discharged or dismissed from the service. We have merely found it necessary to terminate her leave, and, as our letter to her stated, at the time she is able to return to work, in case there is no vacancy in this office, we will be glad to endeavor to place her at a similar salary in one of the other various state departments.”
 

 At the close of said correspondence, the civil service commission, at a meeting of March 12th, placed the following upon their records:
 

 “In accordance with Section 10 of Rule X of the Rules and Regulations of this Commission, Grace Lamb, having been absent from duty without leave from her position of stenographer, grade II in this department, for 10 consecutive days from the expiration of her leave of absence as of February 28, 1925, the commission directs that her separation from the service be entered upon the official roster as an automatic resignation effective this date.”
 

 Subsequent thereto, the relator, on March L8d, notified the respondents that she was ready and
 
 *711
 
 willing to return to her position, but respondents on said day refused to recognize the relator as entitled to the position that she formerly held, and still refuse to permit her to' perform the work and duties of said position, although the relator claims to be now ready and willing and offers to perform said duties.
 

 It is the claim of the relator that under Section 486-14, General Code, the filling of the position of the relator could legally be an emergency appointment only and a temporary one, made necessary by reason of the sickness and disability of the relator; that the respondents, the stale civil service commission, had no authority or right during the sickness of relator to “permanently” disqualify her from said position and deny her the right to fill the same. This claim is chiefly based upon the letter of February 28th wherein is used the expression:
 

 “Miss- Foster has been satisfactorily filling your position, and, inasmuch as we did not wish to lose her services since becoming SO' familiar with the duties of this position, it became necessary, in order to retain her in this office, to grant her this
 
 permanent promotion
 

 The relator, therefore, claims that the “permanent promotion” of Miss Foster to the position formerly occupied by the relator is in violation of that portion of Section 486-14, General Code, which provides:
 

 “In case of an emergency an appointment may be made without regard to the rules of this act, but in no case to continue longer than thirty days, and in no case shall successive appointments be
 
 *712
 
 made; provided, however, that
 
 interim or temporary
 
 appointments, made necessary by reason of sickness or disability of regular officers, employes or subordinates shall continue only during such period of sickness or disability, subject to rules to be provided for by the commission.”
 

 In reply to the contention made under this section the respondents claim that the so-called permanent promotion of February 28th was in fact, and in truth, a temporary promotion only, and a fulfillment of the provisions of ¡Section 486-14. In support thereof, the minutes of the commission under date of February 27, 1925, are offered in evidence. The same are as follows:
 

 “In view of the fact that the duties of the position are of such condition as to require adjustment, the commission, after careful consideration, directed that the indefinite leave of absence granted Grace Lamb, stenographer, grade II, rate C, this department, be canceled as of February 28, 1925, and approved the temporary promotion of Helen Foster, stenographer, grade III, rate A, to this position, effective this date, without examination ; it appearing that she is entitled to same by reason of length of service and satisfactory performance of duties.”
 

 The commission further claimed that the appointment of Helen Foster was not made a permanent promotion until March 12, 1925. In support thereof it offers in evidence the following excerpt from the records of the commission under date of March 12, 1925.
 

 “* * * The commission further approved the permanent promotion of Helen Foster from the position of stenographer, grade III, rate A, to
 
 *713
 
 that of stenographer, grade II, rate C, vice Grace Lamb, resigned, and the temporary appointment of Agnes Bain from certification No. 9522, made under date of March 6, 1925, was made permanent, both effective this date.”
 

 It is therefore argued on behalf of the respondents that, while the letter of February 28th to the relator may have used the expression “permanent promotion,” relating to Miss Foster, yet in truth and in fact such promotion was temporary in character and not made permanent until March 12th; that the records of said commission are paramount in the premises and import verity.
 

 The fact of the illness of the relator is conceded, and an affidavit of a physician is furnished by the relator, which is accepted as true by the respondents; said affidavit reciting that the physician “treated Miss Grace Lamb since August, 1924, for myocardial insufficiency to the 2d day of May, 1925; that previous to April 1, 1925, she was unable to do any work of any kind.” The relator, however, on March 23, 1925, according to the averments of her petition, “notified the respondents that she was ready and willing to return to her position in the state civil service commission, and able to assume the duties incident thereto,” and the relator further claims that, even though the commission had been ready and willing to give to the relator a similar position at a similar salary in another department, she denies the right of the commission to “shift her from job to job,” although at the same salary, and she asks that the respondents be required by mandamus to permit her to perform and exercise the duties and functions of her former position, and that the neces
 
 *714
 
 sary orders, vouchers, or warrant be issued to her for her compensation from and after March 23, 1925.
 

 The respondents deny the right of the relator to the relief prayed for, upon the ground that, under Sections 9 and 10, of Bule X of the state- civil service commission, published by the commission under Section 486-16, General Code, ample authority is granted the respondents, and it became their duty under the circumstances to- proceed in the manner in which they did. Said sections are as follows:
 

 “Sec. 9. With the consent of the civil service commission, the appointing officer may grant leave of absence to a classified employe for a period of not to exceed
 
 one year,
 
 and upon the expiration of such leave of absence, such officer or employe shall be reinstated. All such leaves of absence granted by appointing officers shall be referred to the commission promptly for approval, in order that the civil service status of such absentees may be protected.
 

 “Sec. 10. Absence from duty without leave for any time will be considered good cause for dismissal. Absence from duty without leave for
 
 ten
 
 consecutive days shall be deemed a resignation from the service by the absentee, and upon report of such absence by the appointing power, the absentee shall be removed from the service of the state and the fact of removal shall be entered on the official roster; provided, however, that if at any time within thirty days the person so absenting himself shall make satisfactory explanation to the civil service commission of the cause of absence!, he may be reinstated to his position with
 
 *715
 
 the consent of the appointing officer. Failure to report after a leave has expired or has been disapproved or revoked and canceled by the commission, shall be cause for discharge; provided, however, that if an officer or employe so discharged shall show to the satisfaction of the commission that such failure to report was excusable, the commission may then order his reinstatement, with the consent of the appointing officer.”
 

 Respondents claim that full legal authority exists for granting the leave of absence on January 31st to the relator, and that under the trust imposed upon said commission it became necessary to terminate said leave of absence effective February 28th; that thereafter 10 days were allowed the relator within which to report for duty, and, having failed to do so, by rule X, supra, her absence from duty without leave would be “deemed a resignation from service by the absentee,” and such fact on March 12th, being more than 10 days after the termination of the leave of absence, proper record was made thereof in the minutes of the commission.
 

 This being within the letter and spirit of the law, we are of opinion that the commission was acting within its rights. It therefore becomes immaterial whether the so-called “permanent promotion”' of Miss Foster to relator’s former position was good in law or not, or what the tenure of office of said Miss Foster might be. The burden is upon. the relator to show a clear right to the extraordinary remedy of mandamus, which she seeks. It is not sufficient for her to
 
 *716
 
 show a flaw in the title of others to official position under civil service regime.
 

 The question is, Does the law entitle the relator to the relief that she seeks; in other words, has the civil service commission exercised its legal rights regarding the position of the relator, automatically vacated by reason of violation of Section 10, Rule X of the commission, which it published under Section 486-16, General 'Code?
 

 The record clearly shows that for more than 10 days after February 28, 1925, the date of the termination of the leave of absence, the relator was absent from her work, and by the affidavit of the physician, offered by her in evidence, it would seem that previous to April 1, 1925, she was unable to do any work of any kind. Be that as it may, we think her absence from work after the termination of the leave of absence on February 28th for more than the period prescribed by Rule X, Section 10, of the rules of the commission, deprives relator of the right to a writ of mandamus in this case, and that no clear right thereto has been shown.
 

 In the opinion of the court the civil service commission of Ohio has violated no statutory requirements nor rules of the commission, in that regard, but ha,s acted within the scope of said provisions. The court is therefore unanimously of the opinion that the writ prayed for must be denied.
 

 Writ denied.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.